CHARLES ELBERT WILLIAMS V. STATE

No. 31,630. March 30, 1960
Motion for Rehearing Overruled May 18, 1960

*Thos. H. Dent,* and *A. M. Wickliff,* Galveston, for appellant.

*Jack Hardee,* District Attorney, Athens, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is rape; the punishment, death.

Prosecutrix, a divorcee who resided alone in a rural section of Houston Couny, testified that shortly after nine o'clock on the night in question she was awakened by a knock on her door, that she inquired who was there, and appellant, a farm laborer whom she had seen in the community for approximately two years and who resided some three miles away, replied that he had come to bring the message that her mother was sick. She stated that she put on a house coat over her pajamas, got the keys to her automobile, went out the front door, and just as the door closed appellant grabbed her, told her that her mother was not sick, and informed her that he intended to have intercourse with her. She testified that he forced her to the back of her house, threw her on the ground, got on top of her, and when she hollered out he threatened to cut her throat, at the same time placing an open knife to her throat. After she later gained her freedom, she discovered that the knife had "pricked the skin. It stung and burned." She stated further that after this first act of intercourse on the ground appellant forced her at knife point to drive away from her home over country roads, that he kept the knife open and near her at all times and continued to threaten to cut her throat, that he finally took the wheel, brought the automobile to a halt and raped her again. She testified that when appellant discussed killing her because she "knew too much" she pleaded with him not to do so, promised

not to report what had transpired, and finally he got out of her automobile saying he was going to swim the river and go back to Leon County where he had originally lived, telling her that he would trust her but that if she did report the matter he would kill her if it was the last thing that he ever did. Prosecutrix stated that she drove immediately to her mother's house and reported the rape, that she and her mother drove to her house where she took a douche, dressed and came to town, reported the matter to the officers, and was then examined by her family doctor.

Prosecutrix' mother corroborated her testimony about the immediate outcry.

Dr. Gouldsby testified that he examined prosecutrix and found bruises, contusions and lacerations on the vulva, which in his opinion were the result of something being forced into her vaginal tract, and found an injury to her throat, which in his opinion had been caused by a sharp instrument. He further testified that he gave her sedation to calm her following the emotional shock which she had experienced and treated her daily for some time thereafter.

Mrs. Sherman, with whom appellant was boarding at the time in question, testified that when he came home on the night in question he woke her up and told her that if anyone asked about him to report that he had gone to Houston.

It was shown by other witnesses that appellant was in the vicinity of prosecutrix' home shortly before she testified he came to her door.

Appellant was arrested about midnight and approximately an hour later signed a full confession in which he related both rapes.

Appellant did not testify or offer any evidence in his own behalf.

In his brief on appeal, appellant urges two propositions. He first contends that the two attorneys appointed by the court to represent him were not competent. At the hearing on the motion for new trial, it was established that one of such lawyers had practiced law ten years and had tried another capital case prior to his appointment in this case and had tried other felony

cases, while the other had practiced eight or nine years and had a criminal practice which extended over several east Texas counties and had participated in at least three capital trials. We have re-examined the statement of facts before us in the light of appellant's present counsel's contention and have concluded that appellant's rights were fully protected and overrule his contention in this respect.

Appellant next contends that Article 798, V.A.C.C.P., which authorizes the execution of those who have been assessed the death penalty, is unconstitutional because it has not been uniformly enforced.

At the hearing on the motion, it was stipulated that 83.6% of the population of Texas were members of the white race and 12.7% were members of the colored race. It was further shown that since 1923 no woman had been executed at the Texas prison system, that 22 Latin-American, 102 white and 208 colored men had been executed for crime.

We are unable to agree with appellant that Hernandez v. State of Texas, 347 U.S. 475, 98 L. ed. 866, 74 S. Ct. 667, supports his contention in this respect. The holding there was that this court was in error in failing to recognize that those of Mexican extraction were a separate class, distinct from whites, to which class the rule of systematic exclusion was applicable in determining whether there was discrimination in the selection of jurors.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.